1 BENJAMIN B. WAGNER
  United States Attorney
2 HEATHER MARDEL JONES
  Assistant United States Attorney
3 United States Courthouse
  2500 Tulare Street, Suite 4401
4 Fresno, California 93721
  (559) 497-4000  Telephone
5 (559) 497-4099  Facsimile




FILED

SEP. 1 2 2013

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
                    DEPUTY CLERK

6 Attorneys for the United States

7

8 IN THE UNITED STATES DISTRICT COURT

9 EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 UNITED STATES OF AMERICA,<br><br>12         Plaintiff,<br><br>13     v.<br><br>14 APPROXIMATELY $37,000.00 IN U.S.<br>CURRENCY,<br><br>15<br>        Defendant.<br>16 | 1:13-CV-01075-LJO-BAM<br><br>**ORDER REGARDING CLERK'S ISSUANCE OF WARRANT FOR ARREST OF ARTICLES *IN REM*** |

17     WHEREAS, a Verified Complaint for Forfeiture *In Rem* has been filed on July 12,

18 2013, in the United States District Court for the Eastern District of California, alleging that

19 the defendant approximately $37,000.00 in U.S. Currency (hereafter "defendant currency")

20 is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) for one or more

21 violations of 21 U.S.C. §§ 841 *et seq.*;

22     And, the Court being satisfied that, based on the Verified Complaint for Forfeiture *In*

23 *Rem* and the affidavit of Drug Enforcement Administration Special Agent Shawn Riley,

24 there is probable cause to believe that the defendant currency so described constitutes

25 property that is subject to forfeiture for such violation(s), and that grounds for the issuance

26 of a Warrant for Arrest of Articles *In Rem* exist, pursuant to Rule G(3)(b)(i) of the

27 Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions;

28 ///

1        IT IS HEREBY ORDERED that the Clerk for the United States District Court,

2   Eastern District of California, shall issue a Warrant for Arrest of Articles *In Rem* for the

3   defendant currency.

4   Dated: _____

                            BARBARA A. McAULIFFE

5                               United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Order Regarding Clerk's Issuance of Warrant
           for Arrest of Articles *In Rem*

**AFFIDAVIT OF SHAWN RILEY**

I, Shawn Riley, being first duly sworn under oath, depose and say:

1.     I have been employed as a Special Agent with the Drug Enforcement Administration (DEA) since January 2004, and am presently assigned to the Drug Enforcement Administration Resident Office in Fresno, California. I have successfully completed a sixteen (16) week DEA Basic Agent Training Academy at the Drug Enforcement Administration Academy in Quantico, Virginia. This training included instruction in the investigation of Federal drug violations, including, but not limited to Title 21, United States Code Sections 841 and 846. I have discussed with numerous law enforcement officers, defendants, and informants, the methods and practices used by narcotics distributors. I have been the affiant of federal and state search warrants and have testified in court about narcotics.

2.     I have completed various training provided by the DEA and local law enforcement agencies, including, but not limited to training on identifying characteristics associated with the manufacture, sale, and transportation of various narcotics, including, but not limited to phencyclidine (PCP), methamphetamine, heroin, cocaine, and marijuana. This training involved the use, possession, packaging, sale, concealment, manufacturing, and transportation of various controlled substances as well as its precursors and chemicals used in the manufacturing process. I am familiar with narcotics traffickers' methods of operation including the distribution, storage, manufacturing, and transportation of narcotics and the collection of money proceeds of narcotics trafficking. I have assisted on the execution of several federal and state narcotics search warrants that resulted in the arrest of suspects and seizure of narcotics, as well as cash proceeds of narcotics trafficking.

3.     I have participated in narcotics investigations either as a case agent or in a supporting role. I have debriefed defendants, informants, and witnesses who had personal knowledge regarding narcotics trafficking organizations. Additionally, I have participated in many aspects of drug investigations including, but not limited to, undercover operations,

1  conducting physical and electronic surveillance, and arrests. I have conducted and been
2  involved in numerous investigations regarding the unlawful manufacture, possession,
3  distribution, and transportation of controlled substances, as well as conspiracies associated
4  with criminal narcotics, in violation of Title 21, United States Code, §§ 841(a)(1), 841(c)(2),
5  843, and 846 and the State of California Health and Safety Code.

6       4.      This affidavit is made in support of a warrant for arrest of defendant
7  approximately $37,000.00 in U.S. Currency ("the defendant currency"). The defendant
8  currency constitutes a thing of value furnished or intended to be furnished in exchange for a
9  controlled substance or listed chemical, and is proceeds traceable to such an exchange, and
10 was used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841, *et*
11 *seq.*

12      5.      The facts set forth in this affidavit are known to me as a result of reviewing
13 official reports, documents, and other evidence obtained as a result of the investigation, and
14 through conversations with other agents and detectives who have participated in this
15 investigation and I have determined the following:

16      6.      On December 20, 2012, at approximately 8:28 a.m., California Highway Patrol
17 (CHP) officers were traveling northbound on Interstate 5, south of State Route 145 in the
18 County of Fresno, California. One of the officers observed a black Pontiac, bearing
19 California license plate number 6DMV844 (Registered Owner: Nicholas Colt Vigil, 2675
20 Susan Avenue, Arcata, California) traveling in the number one lane at approximately 60 to
21 65 miles per hour. The officer also observed the driver fail to maintain his vehicle within
22 his lane, drifting over the left lane line on three separate occasions and one time over the
23 right lane line.

24      7.      The officer then initiated a traffic stop on the black Pontiac for a violation of
25 California Vehicle Code § 21658(a) – Unsafe Lane Change. The driver pulled to the right
26 shoulder and stopped. The officer then approached the vehicle and contacted the driver and
27 passenger through the open right front window. The officer advised the driver of the reason
28 for the stop and asked the driver for his driver's license. The driver of the vehicle was

1 identified as Nicholas Colt Vigil (hereafter "Vigil"). The passenger of the vehicle was
2 identified as Jason Paul Jones.

3     8.     As the officer spoke with the two occupants through the open right side
4 window, the officer noticed the distinct odor of marijuana emitting from inside the black
5 Pontiac. The officer asked Vigil to exit the vehicle and to speak with him on the right
6 shoulder of the freeway. The officer told Vigil that he wanted to ensure that Vigil was not
7 falling asleep and asked Vigil how long he had been driving. Vigil stated that they had
8 departed from San Diego, California at 2:00 am. (approximately 6 ½ hours previous) and
9 were traveling to Eureka, California.

10     9.     When asked how long he had been in San Diego, Vigil said he was there for
11 "one week days" visiting his family and stayed in the condo that he and Jones had rented.
12 Vigil was then asked about Jones. Vigil identified the passenger as Jason Jones and that
13 they had traveled together from Eureka to San Diego, California and were returning home.

14     10.     Jones was then contacted by the officer. Jones verbally identified himself as
15 Jason Paul Jones and said that he did not have his identification on him. Jones provided a
16 similar statement that Vigil provided; Jones and Vigil were traveling back from San Diego
17 to Eureka, California, however, Jones seemed extremely nervous and slightly agitated at
18 the questions the officer asked him.

19     11.     The officer spoke again with Vigil and checked his driver's license through
20 CHP dispatch to ensure it was valid prior to issuing a verbal warning to pay attention to his
21 driving and maintain his lane position. The officer then asked Vigil if he possessed a
22 medical marijuana car. Vigil looked at the officer and stated that he did not have a medical
23 marijuana card and that he did not smoke marijuana. The officer told Vigil that he smelled
24 the odor of marijuana inside the vehicle. Vigil stated that Jones might have smoked
25 marijuana.

26     12.     The officer contacted Jones again and asked if he had a medical marijuana
27 card. Jones said that he had one in the black bag located in the trunk of the vehicle. The
28 officer advised Jones that he could smell the odor of marijuana inside the vehicle. Jones

1 stated that there was no more marijuana inside the car and explained that he had smoked
2 it all. Jones then retrieved a medical marijuana card from a black cloth bag from the trunk
3 of the vehicle.

4     13.     The officer advised Vigil that he was going to check Vigil's vehicle to ensure
5 that marijuana inside Vigil's vehicle was within the guidelines of Jones' medical
6 recommendation.

7     14.     The officer conducted a vehicle sniff with his narcotic detection canine, Laika.
8 As Laika entered the trunk of the vehicle, the officer noticed a distinct change in her
9 behavior; Laika began to sniff a black plastic bag located in the trunk, which resulted in a
10 final response as she began to scratch heavily on the bag. The officer returned Laika to his
11 patrol vehicle, and opened the black plastic bag. The officer located a blue square bag
12 inside the black plastic bag, and inside the blue square bag was a large amount of U.S.
13 currency.

14     15.     The officer contacted and advised Vigil that he had found a large amount of
15 U.S. currency. Vigil stated that the money belonged to him. The officer asked Vigil about
16 his employment. Vigil stated that he programmed software. Vigil was again asked if the
17 money belonged to him to which Vigil stated that it was his and that it was $37,000.

18     16.     When asked what planned on doing with the money, Vigil stated that he was
19 planning to reinvest the money in some equipment. Additionally, Vigil said, "it doesn't look
20 like that is going to happen at this time since I don't have paperwork on me to account for it
21 at this time, so you are probably going to take it."

22     17.     The officer asked Vigil again if he was claiming the money as his own. Vigil
23 asked the officer what other options were there, and if he was going to go to jail. The officer
24 said that the option was to claim the money as his own or disclaim the money as not
25 belonging to him, either way the officer had not made any determination as to whether
26 Vigil was going to jail. The officer told Vigil that the decision was Vigil's to make and that
27 the officer was in no way telling Vigil what to do or promising Vigil anything in return for
28 Vigil's decision.

4     Affidavit of Shawn Riley

18.    Vigil agreed to accompany the officer to the Harris Ranch fire station as part of the continued investigation.  The officer then placed the money in the trunk of his patrol vehicle and transported Vigil and the money to the Harris Ranch fire station on State Route 198 east of Interstate 5.  A second officer drove Vigil's black Pontiac to the fire station with Jones as the passenger.  Prior to the arrival at the fire station, Vigil elected to disclaim the defendant currency.  Vigil stated that the money in the car was not his and did not know how much money was inside the bag.  Vigil signed a disclaimer of ownership form, indicating that the defendant currency did not belong to him.  The officer then asked Vigil where he got the money.  Vigil stated that he would not discuss the money with the officer and did not wish to answer any further questions.

19.    In the Harris Ranch fire station, the officer conducted a controlled sniff of the defendant currency with his narcotic detection canine Laika in an area that was pre-determined to not be contaminated by narcotics.  The officer placed the defendant currency in a wooden cabinet located in the garage of the fire station.  The officer conducted a sniff with Laika at the designated are and noticed a distinct change in behavior as Laika passed by the cabinet, which resulted in a positive alert as Laika began to aggressively scratch on the cabinet door where the defendant currency was located.

20.    The officer bagged and sealed the defendant currency and provided a receipt for the defendant currency to Vigil.  Vigil departed from the fire station driving his vehicle on his own accord.  An official count of the defendant currency totaled $37,000.00 in the following denominations: two $5 bills, nine $10 bills, one thousand five hundred seventy $20 bills, twenty-four $50 bills, and forty-three $100 bills.

21.    According to the California Employment Development Department, Vigil has no reported wages for the past three years.

22.    On March 15, 2013, Vigil filed a claim to the defendant currency stating that he is the lawful owner of" some or all" of the defendant currency.  This claim was found to be deficient by the DEA, which gave Vigil the opportunity to correct.  On April 15, 2013, Nicholas Colt Vigil filed a claim to the defendant currency alleging that he is the lawful

1 owner of all of the defendant currency. Despite his claim at the time of the vehicle stop that

2 he had documentation supporting his ownership, Vigil did not provide any supporting

3 documentation at the time of filing of his administrative claim.

4      23.    Based on the evidence presented in this affidavit, it is my opinion that the

5 currency described in this Affidavit are proceeds from criminal offenses or used to facilitate

6 such criminal offenses, as described with more particularity above.

7      24.    Based on the above, I believe there is probable cause to indicate that the

8 defendant currency constitutes a thing of value furnished or intended to be furnished in

9 exchange for a controlled substance or listed chemical, and is proceeds traceable to such an

10 exchange, and was used or intended to be used to facilitate one or more violations of 21

11 U.S.C. § 841, *et seq.*, and that a Warrant for Arrest of Articles *In Rem*, pursuant to the

12 Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions Rule

13 G(3)(b)(i), be issued for the defendant currency.

14

15                   SHAWN RILEY

                      Special Agent

16                   Drug Enforcement Administration

17

18 Sworn to and Subscribed before me

   this _12_ day of September 2013.

19

20

21 Honorable Barbara A. McAuliffe

22 United States Magistrate Judge

23

24 Reviewed and approved as to form.

25

26

27 Heather Mardel Jones

28 Assistant U.S. Attorney

                          6          Affidavit of Shawn Riley